**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

YOANDY FERNANDEZ MORALES,  )
                                                Plaintiff,  )  Case No.: 2:21-cv-01319-GMN-NJK
    vs.  )
                                                           )  **ORDER GRANTING SUMMARY**
HENRY LANDSMAN, *et al.*,  )  **JUDGMENT**
                                              Defendants.  )

Pending before the Court is the Motion for Summary Judgment, (ECF No. 41), filed by Defendants Henry Landsman, Terence Agustin, and Oswald Justin Reyes (collectively, "Defendants"). *Pro se* Plaintiff Yoandy Fernandez Morales filed a Response, (ECF No. 45), and Defendants filed a Reply, (ECF No. 46). Because res judicata precludes two of Plaintiff's three remaining claims, and Plaintiff failed to exhaust his administrative remedies on the other, the Court **GRANTS** Defendants' Motion for Summary Judgment.[1]

**I.   BACKGROUND**

This case arises from Defendants' alleged deliberate indifference to Plaintiff's serious medical need while he was incarcerated. (*See generally* Screening Order, ECF No. 8).

---

[1] Also pending before the Court is the Motion to Seal, (ECF No. 42). Because no party opposes the Motion to Seal and the Exhibit in question clearly contains Plaintiff's medical records, the Court GRANTS the Motion to Seal. The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). When a party requests to seal a document in connection with a motion for summary judgment, a court may seal a record only if it finds "compelling reasons" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016); *Kennedy v. Watts*, No. 3:17-cv-0468, 2019 WL 7194563, at *2 (D. Nev. Dec. 23, 2019) (applying compelling reasons standard to sealing request made in connection with motion for summary judgment). Many courts in the Ninth Circuit "have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records." *Steven City Broomfield v. Aranas*, No. 3:17-cv-00683, 2020 WL 2549945, at *2 (D. Nev. May 19, 2020) (collecting cases). Here, the entirety of the Exhibit Defendants seek to seal contains Plaintiff's sensitive health information, medical history, and treatment records. (*See generally* Medical Records, Ex. E to Mot. Summ. J., ECF No. 43). Accordingly, the Court GRANTS Defendants' Motion to Seal.

Plaintiff's factual allegations in this case overlap with his factual allegations in a prior action before this Court. The Court details the background of both cases below.

**A. The 2020 Case**

On September 10, 2020, Plaintiff Yoandy Fernandez Morales sued Dr. Henry Landsman and Oswald Justin Reyes for allegedly violating Plaintiff's rights under the Eighth Amendment.[2] (*See generally* 2020 FAC, 2:20-cv-01679 #10). Specifically, Plaintiff alleged that he saw a doctor—presumably, Dr. Landsman—because of abdominal pains and was prescribed a special diet and medication.[3] (*Id.* at 3). Plaintiff further alleged that he did not receive said special diet from culinary, and thus sued the Kitchen Manager/Supervisor Justin Reyes. (*Id.* at 4). Additionally, Plaintiff alleged that the medication he was prescribed exacerbated his abdominal pains. (*Id.* at 3).

The Court issued two Screening Orders in the 2020 case. In its second Screening Order, the Court dismissed Plaintiff's claims against Dr. Landsman with prejudice. The Court explained that, as the first Screening Order instructed, Plaintiff "must allege facts sufficient to show that each particular defendant has violated his constitutional rights." (2020 2d Screening Order, 2:20-cv-01679 #12 6:22–23). But Plaintiff's First Amended Complaint in the 2020 case (the "2020 FAC") did not mention Dr. Landsman by name in any of the factual allegations. (*Id.* 6:23–24). And "[e]ven assuming that the doctor that the [2020] FAC's allegations refer to [was] Dr. Landsman, Plaintiff still [did] not state a colorable Eighth Amendment claim against Dr. Landsman" because he failed to allege any facts that could plausibly show that Dr. Landsman's actions were unreasonable or deliberately indifferent. (*Id.* 6:22–7:1). Specifically,

///

---

[2] Plaintiff also brought claims under the Fourteenth Amendment in his 2020 case. (*See generally* 2020 FAC, 2:20-cv-01679 #10).
[3] The 2020 FAC did not allege who prescribed Plaintiff the medical diet. In the instant FAC, Plaintiff alleges that non-party Dr. Symbar Omandac prescribed the medical diet for his high cholesterol. (FAC at 8, ECF No. 9).


"Plaintiff did not allege that the doctor deliberately prescribed him medication that the doctor believed would make Plaintiff feel worse." (*Id.* 7:3–5).

The Court also dismissed Plaintiff's claims against Reyes in the 2020 FAC with prejudice. The 2020 FAC alleged that, after Plaintiff complained about not receiving his prescribed diet, Reyes told him he needed to talk to a "culinary free staff." (2020 FAC at 5). In its second Screening Order, the Court explained that Plaintiff had "not alleged facts sufficient to show that Reyes acted unreasonably and was deliberately indifferent when he told Plaintiff that plaintiff needed to inform the Culinary free staff, not correctional officers, what diet he was on." (2020 2d Screening Order 7:21–23).

After the Court dismissed Plaintiff's 2020 case with prejudice in June 2021, Plaintiff filed a notice of appeal. (2020 Not. Appeal, 2:20-cv-01679 #14). And on July 13, 2021, less than one month after filing his notice of appeal in the 2020 case, Plaintiff initiated the instant case. (Compl., ECF No. 1-1). Plaintiff then voluntarily dismissed his appeal in the 2020 case. (Order granting voluntary dismissal, 2:20-cv-01679 #18).

**B. The Instant Case (2021)**

The instant case, filed while the appeal in the 2020 case was still pending, arises from the same general allegations concerning Plaintiff's health in 2019–2020 but in greater detail. Namely, Plaintiff again alleges that he saw Dr. Landsman in 2019. (FAC at 3, ECF No. 9). Instead of abdominal pain, however, Plaintiff alleges he complained of chest pain, headaches, and dizziness.[4] (*Id.*). Eventually, after a misdiagnosis of pneumonia, Plaintiff was diagnosed with high cholesterol. (*Id.* at 4–5). Plaintiff alleges that Dr. Landsman did not provide any

///

---

[4] The FAC alleges that Plaintiff doesn't speak English and that this language barrier impacted Plaintiff's medical care. (FAC at 3). A language barrier may similarly explain the discrepancies between Plaintiff's 2019 doctor's visit as alleged in the 2020 case and what appears to be the same doctor's visit—or series of visits—as alleged in the instant case.

1 treatment, medication, or diet changes, and thus Plaintiff's condition worsened, leading to two

2 instances where Plaintiff collapsed on November 20, 2020, and February 4, 2021. (*Id.* at 4).

3        Plaintiff also alleges that Dr. Agustin, Dr. Landsman's successor, prescribed a

4 cholesterol medication in September 2020, but Plaintiff did not receive the medication until

5 five months later in February 2021. (*Id.* at 6–7). By then, Plaintiff had already collapsed twice.

6 (*Id.*).

7        Lastly, Plaintiff again alleges that he did not receive the medical diet he was prescribed,

8 and again sues Reyes for failing to provide his doctor-approved medical diet.[5] Plaintiff's

9 claims for Eighth Amendment deliberate indifference to serious medical needs against

10 (1) Dr. Landsman, (2) Dr. Agustin, and (3) Reyes survived the Court's second Screening

11 Order.[6] Defendants now move for summary judgment on all claims.

12 **II.   LEGAL STANDARD**

13        The Federal Rules of Civil Procedure provide for summary adjudication when the

14 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

15 affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

16 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

17 may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

18 A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

19 return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a

20 genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

21 differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

22 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary

---

[5] Plaintiff alleges that non-party Dr. Symbar Omandac prescribed him a medical diet low in cholesterol and fat. (FAC at 8).

[6] The Court dismissed Plaintiff's official-capacity claims for damages against Defendants with prejudice and Plaintiff's Eighth Amendment claim based on a language barrier without prejudice. (2d Screening Order 3:24–28 n.2; 6:13–14).

1 judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving
2 party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*
3 *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to
4 isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477
5 U.S. 317, 323–24 (1986).

6     In determining summary judgment, a court applies a burden-shifting analysis.  "When
7 the party moving for summary judgment would bear the burden of proof at trial, it must come
8 forward with evidence which would entitle it to a directed verdict if the evidence went
9 uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing
10 the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
11 *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and
12 quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving
13 the claim or defense, the moving party can meet its burden in two ways: (1) by presenting
14 evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating
15 that the nonmoving party failed to make a showing sufficient to establish an element essential
16 to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477
17 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be
18 denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress*
19 *& Co.*, 398 U.S. 144, 158–60 (1970).

20     If the moving party satisfies its initial burden, the burden then shifts to the opposing
21 party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*
22 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,
23 the opposing party need not establish a material issue of fact conclusively in its favor.  It is
24 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
25 parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  But the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   DISCUSSION**

Three claims remain, one claim against each defendant: (1) Dr. Landsman; (2) Dr. Agustin; and (3) Reyes.  Defendants move for summary judgment on five grounds: (1) Plaintiffs' claims are barred by res judicata; (2) Plaintiff failed to exhaust his administrative remedies; (3) Plaintiffs' claims fail on the merits; (4) Defendants are entitled to qualified immunity; and (5) Defendants did not personally participate in the allegations concerning Plaintiff's medical diet.  The Court agrees that res judicata bars claims one and three against Dr. Landsman and Reyes, and Plaintiff failed to exhaust his administrative remedies on his second claim against Dr. Agustin.  Accordingly, the Court does not address Defendants'

remaining arguments.

**A. Res Judicata**

Res judicata, or claim preclusion, applies when "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). It prohibits the re-litigation of any claims that were raised or could have been raised in a prior action. *Western Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). In order for res judicata to apply, three elements must be met: "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.*

To determine whether there is an identity of claims between the first and second adjudication, courts examine "whether the two suits arise out of the same transactional nucleus of facts." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney [or *pro se* litigant] may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003). Indeed, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Id.* at 1078. "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Id.* (quoting *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905 (9th Cir. 1998)).

Similarly, application of res judicata does not require the parties to be identical: "privity may exist if 'there is substantial identity between parties, that is, when there is sufficient commonality of interest.'" *Id.* 1081 (quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.

1983)).  Lastly, "dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (quoting *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)).  Defendants' Motion establishes that all three elements are present for Plaintiff's first and third claim, but not his second.[7]

### 1. Claim One: Dr. Landsman

Plaintiff's claim against Dr. Landsman, though slightly different from his claim against Dr. Landsman in the 2020 case, is barred by claim preclusion.  The Court notes that there are several factual discrepancies between the instant claim against Dr. Landsman and the 2020 claim against Dr. Landsman, including Plaintiff's symptoms in 2019. (*Compare* 2020 FAC at 3 *with* FAC at 3).  Nonetheless, both claims arise out of the same transactional nucleus of facts: the medical care Dr. Landsman provided to Plaintiff beginning in 2019.

Even if Plaintiff's instant claim against Dr. Landsman can be construed as alleging something new or different from his 2020 claim against Dr. Landsman, the Court finds that such claim could have been brought in the 2020 case.  Indeed, the only events that have allegedly occurred after Plaintiff filed the 2020 case were the two incidents in which Plaintiff collapsed, in November 2020 and February 2021. (*See* FAC at 4).  But Plaintiff alleges that he collapsed as a result of Dr. Landsman's inadequate medical care stemming from his 2019 doctor's visit with Dr. Landsman.  That is, these new allegations arise out of the same transactional nucleus of facts as his 2020 case. *See In re Greenstein*, 576 B.R. 139, 173 (Bankr. C.D. Cal. 2017), *aff'd*, 589 B.R. 854 (C.D. Cal. 2018), *aff'd*, 788 F. App'x 497 (9th Cir. 2019) (finding claim preclusion applicable even though complaint provided, among other things, additional factual detail).

---

[7] Plaintiff did not address Defendants' claim preclusion argument in his Response. (*See generally* Resp., ECF No. 45).

Additionally, the 2020 case resulted in a final judgment on the merits: the Court dismissed Plaintiff's claim against Dr. Landsman with prejudice for failure to state a claim under a Rule 12(b)(6) standard. (2020 Screening Order 2:20-cv-01679 #12). "[D]ismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." *Stewart*, 297 F.3d at 957 (quoting *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). Although Plaintiff appealed the order dismissing his claims, he chose to voluntarily dismiss the appeal. (Order granting voluntary dismissal, 2:20-cv-01679 #18). Accordingly, the 2020 case resulted in a final judgment on the merits.

Lastly, there is identity of the parties because Plaintiff is again suing Dr. Landsman. Because all three elements of res judicata are met, Plaintiff is precluded from bringing claim one against Dr. Landsman, and summary judgment is warranted.

**2.  Claim Two: Dr. Agustin**

Plaintiff's claim against Dr. Agustin arises from a new transactional nucleus of facts. Although Plaintiff's claim against Dr. Agustin generally relates to Plaintiff's medical care, Plaintiff alleges that he continuously requested to receive his cholesterol medication from September 2020 through February 2021, and Dr. Agustin ignored these requests. (FAC at 6–7). The 2020 case did not allege any facts relating to whether Plaintiff could obtain his prescribed medication. Moreover, on the face of the FAC, the issue regarding his cholesterol medication appears to have arisen after Plaintiff filed his 2020 case on September 10, 2020. According to the FAC, Plaintiff first submitted a kite requesting his cholesterol medication on September 7, 2020. (FAC at 6). Plaintiff would not have been able to properly grieve this issue and include it in his complaint three days later. Thus, Plaintiff could not have included this claim in his 2020 case. Accordingly, claim preclusion does not apply to this claim.

///

///

### 3. Claim Three: Reyes

Plaintiff's claim against Reyes is substantively identical to his claim against Reyes in the 2020 case. In both cases, Plaintiff alleges that Reyes, as kitchen supervisor, did not ensure that Plaintiff received his proper medical diet. (*Compare* FAC at 8–10 *with* 2020 FAC at 4–5). Thus, there is identity of parties because Plaintiff is suing the same individual, Reyes, and there is an identity of claims because the claims against Reyes arise out of the same transactional nucleus of facts. Additionally, as explained above, the Court dismissed the 2020 with prejudice and Plaintiff voluntarily dismissed his appeal, resulting in a final judgment on the merits. Accordingly, Plaintiff's claim against Reyes is barred by claim preclusion.

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The defendant bears the initial burden to show that there was an available administrative remedy, and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally

available administrative remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166; *see* Fed. R. Civ. P. 56(a). If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case then proceeds to the merits. *Albino*, 747 F.3d at 1171.

Defendants' Motion for Summary Judgment includes a copy of the Nevada Department of Corrections ("NDOC") Administrative Regulation ("AR") 740, entitled "Inmate Grievance Procedure," which governs the NDOC grievance policy. (AR 740, Ex. D to Mot. Summ. J., ECF No. 41-5). Before beginning the grievance process, an inmate must first attempt to resolve the matter by other means, "such as discussion with staff or submitting an inmate request form." (AR 740.08(1)). If the inmate cannot otherwise resolve the issue, then the inmate may file an informal grievance. (*Id.*). "Only inmate claims arising out of, or relating to, issues within the authority and control of the Department may be submitted for review and resolution." (AR 740.03(3)).

For claims regarding medical issues, the procedure continues as follows: (1) an informal grievance, which is "responded to by a charge nurse or designee of the Director of Nursing," (AR 740.08(2)(B)); (2) a First-Level Grievance appealing the Informal Grievance decision to the "highest level of Nursing Administration," (AR 740.08(12)(A), 740.09(1)(B)); and (3) a Second-Level Grievance, which is decided by the Medical Director, (AR 740.10(1)(E)). For both the Informal Grievance and the First-Level Grievance, the prison's response should be provided within forty-five days, and then "[t]he inmate must file an appeal within five (5) calendar days of receipt of the response to proceed to the next grievance level." (AR 740.08(12), 740.09(5)). Inmates may proceed to the next grievance level if they do not receive

a response within the time frame indicated in the regulation. (AR 740.03(8)(B)). These three levels constitute the process required for an inmate to exhaust all available NDOC administrative procedures. (AR 740.03(6)).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies. Because the Court has already found that Plaintiff's claims against Dr. Landsman and Reyes are precluded, the Court only addresses whether Plaintiff exhausted his administrative remedies regarding his claim against Dr. Agustin for failure to provide his cholesterol medication.

Plaintiff asserted that he was not provided with proper medical treatment for his high cholesterol in Grievance 2006-31-10328. (Grievance 2006-31-10328, Ex. A to Mot. Summ. J., ECF No. 41-2). Plaintiff filed an Informal Grievance for Grievance 2006-31-10328 in September 2020. (*Id.* at 2). NDOC returned the grievance because Plaintiff did not request a remedy and instructed Plaintiff to re-submit the Grievance after curing the deficiencies. (*Id.* at 11). Plaintiff re-filed his Grievance in January 2021. (*Id.* at 13). NDOC again returned the Grievance to Plaintiff for the same reason as before. (*Id.* at 16).

Plaintiff then filed a First Level Grievance in March 2021. (*Id.* at 17). NDOC rejected the First Level Grievance because the Informal Grievance was not accepted. (*Id.* at 20). NDOC instructed Plaintiff to resubmit the Informal Grievance. (*Id.*). Plaintiff did not file a Second Level Grievance.

Because Defendants show that Plaintiff did not file a Second Level Grievance, they meet their initial burden on summary judgment. The burden now shifts to Plaintiff to demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Plaintiff argues that he grieved his lack of medical care "to no avail" and the "grievances coordinators capriciously and arbitrarily denied Plaintiff's grievances or reject[ed them] on

purpose." (Resp. at 6). He thus asserts that administrative remedies were not available to him. (*Id.* at 36). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 578 U.S. 632, 643 (2016). Here, Plaintiff was not at a dead end; each time the NDOC rejected his grievance, they included instructions on how to continue. Plaintiff has not come forward with evidence showing otherwise. The Court does not find that, simply because Grievance 2006-31-10328 was rejected twice at the informal level and once at the first level, the administrative procedure was unavailable to Plaintiff.[8] Accordingly, the Court GRANTS summary judgment on Plaintiff's second claim because Plaintiff did not exhaust his administrative remedies.

**C. Defendants' Request for a Strike**

Defendants request that the Court issue a strike against Plaintiff for filing a frivolous lawsuit. (Mot. Summ. J. 23:20–24:16). Under 28 U.S.C. § 1915(g), "if [a] prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," he may not proceed in forma pauperis and, instead, must pay the full $400.00 filing fee in advance unless he is "under imminent danger of serious physical injury." So courts may issue a strike when a prisoner files a frivolous action.

The Court declines to issue a strike in this case. Although two of the three remaining claims are precluded by res judicata, one claim is not barred. And even though the Court also grants summary judgment for defendants on this claim, the Court declines to issue a strike on this basis in this case. Plaintiff does not have an attorney and does not speak English, and

---

[8] The Court recognizes that Plaintiff sent numerous kites to Dr. Agustin in an attempt to receive his prescribed medication. And Plaintiff was understandably frustrated if he felt that his kites were ignored. But his frustration with the kite process does not excuse his failure to exhaust administrative remedies.

therefore the Court does not expect him to understand the intricacies of legal principles like res judicata.  The Court nonetheless cautions Plaintiff against filing additional actions that include claims that have already been decided in court.  Any subsequent filing of new lawsuits based on the same factual allegations may result in a strike.

### 4. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 41), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Exhibits Under Seal, (ECF No. 42), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter Judgment for Defendants and close the case.

**DATED** this __16__ day of November, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court